Lowell Denton v. City of Yoakum, Texas The District Court below erred in failing to rule on and consider the qualified immunity that we asserted for our clients under a 12B6 motion. In 2012, this Court had reversed an almost identical order by Judge Hoyt in a qualified immunity case where the Court basically said, we'll deal with this on summary judgment after you all do some discovery. We believe that that is error on the basis of that Bakke v. LeBlanc case out of Galveston, Texas, which we cited. Shifting from that . . . You're not asking us to do the same thing we did, though, in that case, correct, what we did in that case was remand and say you have limited discovery after Judge Hoyt figures out what the limits ought to be. You're asking us to go ahead and rule, correct? I am asking you to go ahead and rule, recognizing, obviously, that the other alternative is one possible outcome here. We believe that on the rest of our brief where we talk about the merits of qualified immunity, we believe that this Court can appropriately rule on qualified immunity on the pleadings. Well, our prior panel said no, right? That's correct. How do you draw the case? How are we in a different procedural posture? I would concede that it's not a different procedural posture, and so that may be the only remedy. It appears to me, and I don't have a case that says otherwise, that when this Court is looking at a 12B6 motion on a de novo review of whether or not it applies on these pleadings, that's not the only alternative. But if it is, then we go back and we get that ruling and we see where we are. I'm not as familiar with what was going on in the Bakke case, but I've looked at yours quite carefully. I can't figure out what discovery, like if we followed that procedure and we sent it back for some appropriate amount of discovery prior to the ruling on the qualified immunity motion, I can't even figure out what that would look like. Well, and that's the point of my contention. I believe that the Fairchild case, when you shift into that and you look at the reality that city attorneys, city managers, mayors are applying this case that looks like it's directly on point, that has a separate procedure for deciding employee performance and misconduct issues, where you have something that's on the agenda, as you did in this case, and the thing that's on the agenda is not what Ms. Johnson wanted to talk about. She wants to talk about a different person, and she wants to criticize that person, and there's a separate process for that. The problem here, as they allege, is that they didn't follow that policy, and they did not apply that policy uniformly, that in the past they have allowed people to put on the agenda and speak negatively about employees contravening the policy, so I thought what the discovery was aimed at was were there, in fact, instances where the policy was not followed, and how many? I don't believe that that meets the qualified immunity test, because the test, of course, Your Honor, is whether or not only the plainly incompetent people would believe, based on the Fairchild case, that what we're doing is consistent, and that may be the answer on the merits. This court may decide on the merits, as against the city with respect to the injunctive relief or the other relief sought, that there's a constitutional violation here, but there is no case with reasonably analogous facts that tells my clients, you can't tell somebody it's not on the agenda, you can't talk about it. You can't tell somebody we have a different process where we investigate and inquire into employee misconduct. You have to use that. When they show up, they say, well, I want to say something nice about this employee, and now I want to go off on a . . . Was that briefed to the prior panel? No, I don't believe it was, Judge. It wasn't? They didn't ask for qualified immunity in the . . . Oh, absolutely, they asked for qualified immunity. And somebody didn't say, what's the clearly established law? I don't think Bakke v. LeBlanc. It was a police context. The court did say that there was absolutely no pleading against Steve LeBlanc that reached him, but nevertheless, the court sent it back to Judge Hoyt to make that determination about what if any discovery would be dispositive. It did not grant the qualified immunity as to Steve LeBlanc, but it did observe that there was no cause of action pleaded against him on the face of the complaint. And so, that's why we believe that it is appropriate on the face of this record. I don't know of a set of facts, including the one that you're asking about, about these prior cases, because there is no case that tells reasonable public officials this is a clear constitutional violation. If two years ago, a police officer was allowed to criticize somebody in the police department for an event, that means all the bets are off, the rules don't apply anymore, you get to come in here and talk, you know, critically about everybody, even though that's not the normal process. There's no case that says that. That's why we believe qualified immunity on this record should be granted by this court in a de novo review. Do we have the minutes from that previous meeting? The minutes are attached. They have... I'm sorry. The minutes from the police officers criticizing the fire department. We do not. We have their allegation in the complaint. We have the minutes from the two meetings that involve Ms. Johnson. Would they be subject to judicial notice? We believe that they are, and we believe that takes it out of their argument for the rule that that converts this into a summary judgment proceeding. They're properly before the court on a 12B6 review. Are they on the internet? I can't say for sure. Have you reviewed them? They are attached. No, no. To be clear, the minutes I'm talking about are the police department, fire department... The prior ones from two years ago in 2015. I cannot answer that. I do not know. In their pleading, I just will say this, that I think that in this context, the allegations are that we didn't have an adequate policy. I think they're trying to make a distinction from the Fairchild case, which had a very diverse educational agency about how school districts do this, but the analogy to Fairchild is very, very close. They themselves plead that she was told that's the city manager's job to evaluate employee conduct and misconduct, and it's a separate process. That's a direct analogy to Fairchild. All of these kinds of rules have to apply in all state and local legislative bodies. Realistically, is somebody that goes to a Texas Senate committee or the Railroad Commission or something else going to be entitled to make some positive comment about someone and then claim that there's viewpoint discrimination, because that's the only thing that they attempt to say is a clearly established right, viewpoint discrimination. Fairchild would not be any different if Ms. Fairchild had come to the podium wanting to and for, and say, well, she did this and this and this well, and therefore, through her own conduct, open up the forum and say, now I'm going to talk about the bad things that caused me to lose my job. We don't think that changes Fairchild, and we think that's what this case is about. I'll reserve the rest of my remarks for rebuttal. Before you leave, let me make sure I understand where you think this case was left by Judge Hoyt. You had your 12B6 motion pending. Discovery is appropriate. First, he says it may be a meritorious motion, but it's premature. Discovery is appropriate, followed by a motion for summary judgment. Any remaining issues may be subject of a trial. So he has foreclosed the 12B6 issue, it seems to me, by ordering full-fledged discovery. Were we to remand it, and say apply the procedure that Judge Jones set out in Backe or whatever that party's pronunciation is, does that put it back in a 12B6 situation? If you have limited discovery, does that mean we're, I guess that means we're under a summary judgment standard at that stage, or you would be in district court? I believe, I believe that it would be under a summary judgment standard if the court's question on the pleadings, if there's something here that I have to determine in order to see whether or not qualified immunity would apply, presumably under Fairchild, just using that hypothetically. What is it in Fairchild that has to be determined here? I guess what I'm asking is, it seems to me he has effectively denied the 12B6 by saying that you must have some at least limited discovery, and after limited discovery, depending on what I do at that stage, I, the district judge, perhaps will have more discovery, but the 12B6 has been denied. I believe that that would be analytically correct, as I understand what the law is. If I don't have enough information to plead a good case under 12B6, I get to have my discovery so that I can then satisfy my pleading requirement under 12B6. Usually, you don't have this limited discovery angle as part of it, but . . . Thank you, Counsel. Well, just, what about, is there any other aspect of the cause of action that you want to address for damages? At this point, Judge, I believe that the qualified immunity issue is the only issue before the court. I would say that as to the named defendant, Sterry, who appears only to be sued under HIPAA, that it's problematic about the qualified immunity piece because there is no private cause of action under HIPAA. And so, we claim that the Sterry cause of action, since it's directly related to everything that she wanted to talk about under the First Amendment, is inextricably linked to that under the case law that says the court has jurisdiction on a qualified immunity appeal with respect to other causes of action that are inextricably linked. You argued, I thought in your brief, that the plaintiffs don't show any legal wrong. We do. We argue on the merits that under Fairchild, that we actually complied and did not violate the First Amendment, and that it is appropriate in a limited public forum for us to say you have to go to the city manager first. Can we reach that on appeal? On this appeal? I don't believe so because it's an interlocutory order on the qualified immunity appeal. I think that would have to be on a summary judgment motion. May it please the court opposing counsel, my name is Millie Thompson. And with Angelica Cocliano, we represent Caressa Johnson, the plaintiff, and Appley. I would like to address one of the questions most recently asked. Let me say you've divided up your time between the two of you, correct? Yes, Your Honor. What is your preference whether we follow it or not? How are you planning to divide it? We would like to divide it equally ten minutes. I know, but what subject areas? Subject areas. What I would like to go through is try to answer some of the questions that you asked opposing counsel as well as go through the clearly established law on viewpoint discrimination and retaliation and why the First Amendment was violated in this case. Ms. Cocliano will then go into how the reality is there was no policy in this situation because it was not written. And under clearly established law, any sort of viewpoint discrimination must be carefully regarded against, and so there must be a written policy if that's permissible. There was a question asked if discovery is appropriate on remand, then is this still in a 12B6 posture? And I would answer yes. If you remand this case, it would still be in a 12B6 posture. And the reason why, in my response to their motion to dismiss on page 127 of the record, I asked for an opportunity to replead any deficiencies. And one possible deficiency. What? An opportunity to replead for any possible deficiencies. And to your point, Your Honor, in terms of the minutes where the fire department and police department were allowed to essentially disrupt a meeting and complain about each other, I would replead to reflect the facts of that particular instance from 2013. Would you need to replead it? Are those minutes on the Internet? I don't believe that they are on the Internet, Your Honor. But they would be subject to judicial notice as public records or government records? That is the sticky part. I think that that would be yes, while at the same time I don't think that what was attached to the defendant's motion to dismiss was appropriate to take judicial notice of because the person who swore to those minutes is the same person who sued in this case, Teresa Bowe. But the things that are attached to the defendant's motion are things referenced in the complaint, right? It's not like they introduced it. I'm trying to remember all of the exhibits. Right. They attach the agenda items, and that would be appropriate, and no complaint there. They also attach the minutes, and there is some distortion of the representation of what happened in those meetings. So, for example, on page 93, the minutes regarding the May 8, 2018 minute are not accurate because she did not speak outside of the agenda issue. She spoke directly to the agenda issue that she asked to be placed on the counsel agenda. So Judge Southwick's question, if we sent it back under VACI for this limited discovery idea so that hypothetically your client could put the meeting minutes from this firefighter police department dispute into the record, would that be the extent of the discovery? Because I would imagine anything more than that would be not a 12B6 posture anymore. I mean, if we're talking depositions and written discovery and RFAs and all the rest of it, I would assume that that would transport this into a different posture. Pursuant to this Court's cases in Heaney v. Roberts as well as Chiu v. Plano, there is an ability to get discovery on motivation when it comes to viewpoint discrimination, whether or not the official was motivated by a discriminatory interest rather than some sort of legitimate reason for differentiating between speech. So, yes, I think that discovery would be appropriate on that issue based on those two cases. But it would no longer be a 12B6? That's correct, Your Honor. So if I take it from that answer that you believe that Judge Hoyt denied the 12B6 motion? I think that there are two ways to read his order. One is to read it as sustaining my objections to the attachments that the defendants attached to their motion and treating it as if it were a motion for summary judgment by saying we need discovery before there is a motion for summary judgment. Or you can read it as you need discovery before ruling on the qualified immunity issue because of Heaney v. Roberts and Chiu that you need discovery on this motivation issue. So we see the second category of denial all the time where a district judge we see the second category of denial all the time where the district court will say, sorry, I cannot grant qualified immunity at this point, we're going to have discovery. But that is the denial of a Rule 12B6 motion and hence a denial of the government official's immunity from suit, which is what qualified immunity is supposed to be. And so I take it from that answer that it is a denial of the qualified immunity motion. Under this court's rulings, yes, I think that's correct, Your Honor. Thank you. Now, in terms of the question that was asked. Has it been established in this case by any prior panel that this is viewpoint discrimination? In this particular case with Carissa Johnson, no, Your Honor. What's your best case? Because you have to show a constitutional violation. What's your best case that when a government entity says, we will allow criticism, we won't allow criticism of employees because that's an employee matter and that shouldn't be out in the public, but we don't care if there's price. What's your best case that says that is in fact viewpoint discrimination? Heaney v. Roberts is our best case from this court out of 2017. And then I would say that Fairchild actually supports our position as well, Your Honor. And I'll explain. So in Heaney v. Roberts in this court that was decided in January of 2017, more than a year before Carissa Johnson sought to speak at the May 8, 2018 meeting, the district court in that case stated it is beyond cowbell that a reasonable governmental official in Roberts' position, the official, would have known that it would be impermissible under the First Amendment to prevent Heaney from speaking and to eject him from the meeting based on the message he was conveying. We agree at page 802. If you then go to Fairchild. That was a district court case. This court was quoting the district court and saying we agree. So it is beyond cowbell that a reasonable official in this position would know that it violates the First Amendment to prevent someone from speaking and to eject him from a meeting based on the message he was conveying. And what was his message? The message in Heaney he was arguing over the campaign finance contributions to a city council. But that's a different issue than an employee matter. I mean, it seems to me there's a substantial body of law that says you can have closed meetings about employee matters and complaints about employee matters. Yes, Your Honor. If you look at Fairchild, though, Fairchild herself, Julie Fairchild, was permitted in that Liberty Independent School District meeting to complain about another teacher. She was allowed to complain about the other teacher. And that is on, I believe, page 756, I believe. What she could not do, what she was not permitted to do pursuant to their policy, was name the other active employee teacher, Lanier. They have a different policy, but that doesn't mean the First Amendment compels the different policy. I think it does. And the reason I think it does is because with viewpoint discrimination, you cannot discriminate based on someone's opinion. I like this employee. I don't like this employee. That's by definition someone's opinion. You're making a qualified judgment about the quality of the individual or the thing. So I think that's black letter viewpoint discrimination. Well, if the policy would prohibit a complaint that said I really like this person and I think that you should promote them, and it would also prohibit a policy that said I don't like this person, you should fire them, that's not viewpoint discrimination. I agree. But that is not what we have with Carissa Johnson. And the reason it's not what we have with her at the May 8th meeting in 2018 is Stephen Starry had been allowed to resign in lieu of termination in January of 2018. Because he was no longer an active employee, the Texas Open Meetings Act, Section 551074, would not apply to him at all. On any of the spectrum for an employee, that we like him, we want to promote him or give him a raise, or we don't like him, terminate him or warn him. So in that way, he was completely removed from what opposing counsel would say would be the reason why you would exclude that from a public meeting. So there would be no reasonable basis related to the forum why you would exclude that opinion when you're allowing the opinion, a positive opinion, when you're allowing someone to praise the individuals in the exact same posture as Starry for the exact same event. And if you look at pages 25 through 26 for Carissa Johnson's statement, and I'm out of time. Thank you, Your Honors. Good morning, judges. May it please the court opposing counsel. I'd like to just quickly start by, I think, finishing what my co-counsel was about to say, which is that the statement at issue in this case actually included both viewpoints. And so she, in the exact same sentence, was praising one employee and acknowledging or asserting that she was praising that employee because of the bad behavior of somebody else who used to be employed. So in the exact same sentence were both viewpoints, and she was allowed to say one of those viewpoints and not allowed to say the other viewpoints. And so we completely agree with you, Judge, about your categorization of what would be a topic and what would be a viewpoint, and that's exactly what is at issue here. I also want to point out that part of our facial challenge to the policies or unwritten policies is based on unbridled discretion on the part of the city manager, on the part of city council. In their additions to their, excuse me, motion to dismiss, in their addendum, they included a policy that was distributed and made public only after the events in this case. And so at the time that Ms. Johnson originally tried to come and speak before the city council and complain about the actions of a city employee, there was no official policy at all. And so the government code that we've been talking about that says that a city council can choose to have complaints taken outside of an open meeting was not made the policy yet. They hadn't taken advantage of that policy. And so when they were denying Ms. Johnson's right to complain about this employee at the outset, before she even got to the point where she was adding it to the additional praise that she was giving at the city council meeting, she was simply denied and given a reason for that denial that didn't cite any policy that supported that denial. And under City of Lakewood, which is the United States Supreme Court, a case that establishes that it's a blatant violation of First Amendment rights to have unbridled discretion when you're deciding who can and cannot express their views, it says that even if you're given a reason, that's still not good enough. Because the basic fact that a city official can decide whether or not to let somebody speak without any established protocols is by itself, without anything more, a violation of the First Amendment. And we don't believe that any qualified immunity defense would apply to that because it's an obvious First Amendment right, whether or not you get to express yourself in front of city council. And also it wouldn't be reasonable for any city official, any city official at all, to think that it would be okay to discriminate without any policy deciding who can speak, why they can speak about it, and what viewpoint they can speak about. Counsel, do you have case law that basically says that well-established custom of not allowing employee matters to be discussed isn't good enough? I mean, we're at the pleading stage, and we may not have evidence that there's well-established custom in this situation. But do you have case law that says that sort of long-running sort of common sense, I might say, but doesn't necessarily mean it's constitutional limitation, it would not be good enough? No, Judge. I agree with you that if there was evidence in the pleadings that there was a long-standing custom that they do it this way, that that could be considered. But on the face of the complaint, it's actually the opposite, Judge. It's the opposite because they are letting people talk about employee matters. And so there is no evidence even now. Even, Judge, in the policy that they have released in 2019, it still does not say that unless you meet these exceptions, we will definitely let you express yourself, and we will definitely let you talk to City Council, which is exemplified by the fact that the defense in this case is not even citing one of the policies that's in their newly published manual, right? They're saying, well, we let you talk about employees, but only if they're not direct report employees. And there is nothing about direct report employees either in the history or in any of the facts that have been pleaded by either party or even in the now-published 2019 policies that have been released by the City Council. And so while I agree with you, Judge, that a longstanding, widely accepted, everybody-knows policy that has been abided by by a government entity would be similar to having established policy or printed publicly available policy, there is not even that in this case. That's all I have, Judge. I'll donate the rest of my time. I'll take time back. There is no case that says the absence of a written policy is fatal to qualified immunity. There's no case that says that a city has to have a laid-out context in order to comply with the First Amendment. These pleadings that they wrote make it clear that they were told by the City Manager that you can't complain about employees because that's up to me. You can complain about me because that's a City Council item. It is absolutely incorrect that there's an obvious First Amendment right to go to any City Council, take the podium, and complain about employees. That's only true if they have created a public forum to do that. Many cities have a public comment session, and if they choose to do that and citizens can come up and talk about what they want to, that's a problem. In Fairchild, they had a situation that did, in fact, allow Ms. Fairchild to come to the podium and get to the point that she said, I think the reason I got fired was my co-employee that I was working for. At that point, under their policy, they stopped her and said, that can't proceed further. It goes beyond the limited public forum as defined. These pleadings show that the limited public forum in Yoakum was defined by the agenda, and in this case, the agenda was to talk about somebody else and to commend them, which she attempted to expand by complaining about a different employee at the same event. We don't believe that that violates the clearly established parameters of Fairchild. My clients were not plainly incompetent in believing when they read that. Like other city attorneys, employees, mayors, city managers around the state, we are entitled to put things on the agenda and tell people that they can't talk about them if they do. Haney v. Roberts is not applicable, because Haney was the presiding officer, Roberts, over in Gretna, right across the river, who said, you can't talk about this, you're not a lawyer, only our city attorney can tell us what the answer is. Totally different. That was about who could talk, not about what topic they could talk about or viewpoint discrimination. What do you do with the fact that Sterry was no longer an employee at the last meeting? That's actually my last point. I think that once Sterry is no longer an employee, she has no public forum. The city council doesn't have to hear anybody's comments about Sterry. He doesn't work there anymore. And so they say that since he's no longer an employee, that means it takes it out of this rule that we don't let you complain about employees. It goes to the city manager. That's not a topic that the city council has any agenda for. But it does take away from the proposition. Like if the city council's justification for the limitation on the topic is employee matters, that's in the city manager's province. We're not going to do that in a public meeting. That makes some sense. But once he's no longer an employee, how is it any different than the conditions in the city park or anything else that they just want to talk about that is outside the ambit of the rule that you've articulated? And if the city had a general public comment where you can come to the podium and talk about whatever you want, I think that would be the rule. We believe these agendas show that you'll compose particular items, and those are the only items appropriate under the Texas Open Meetings Act, which is discussed in Fairchild as a sound logic for defining the limited public forum under the First Amendment. If a city decides you can come up to the podium and talk about anything, then this would be a different case. What was the agenda item that she was legitimately allowed to address at the meeting, the last meeting? She wanted to comment, and she wanted to commend the department and the chief for above and beyond the call of duty on the response to her and where she was taken to the hospital. Did not mention employee stare, did not mention any criticism, and she pleads that she was told by the city manager she could not talk about criticisms of those employees. And that's the problem. Why would the city not allow her to criticize a former employee? And she could have said, we want you to change the policy about how you do X, Y, and Z on these types of calls. Because it falls within the criticism of a public employee goes to the city manager. He was gone. I understand. That's just saying, I'm not talking about any specific employee, but let me tell you what happened to me, and this wasted time, and you shouldn't let this happen. I understand. Going forward, why isn't that a legitimate discussion? It was not on the posted agenda item. They told her she couldn't put it on there. Correct, and they're entitled to tell her, we're not going to let you come and talk to the city council. It's not an action item for them. So we're not putting it on the agenda. And there is no First Amendment requirement that a public body put your issue on for consideration. I can't go to the Texas Senate and say, I want to talk about what I don't like about Governor Abbott. Well, we're not here for that today. We're here on this bill. The city can define its agenda, and I think the law is clear. Thank the court.